

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

VINCENT CARR aka TYRONE
HARRIS,

               Plaintiff,

      - against -

THE CITY OF NEW YORK, POLICE
OFFICER JOSEPH BAROSA, shield no.
25718, POLICE OFFICER JOHN G.
HAWTHORNE, shield no. 3941, POLICE
OFFICER MARK MACDONNELL,
shield no. 14958, SERGEANT MCCORD,
and DETECTIVE GREGORY
THORNTON,

               Defendants.

-------------------------------------------------- X

**OPINION AND ORDER**

**11 Civ. 6982 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

         Plaintiff Vincent Carr spent four and a half years in prison following

his conviction for criminal possession of a controlled substance with intent to sell.

Following his release from prison, Carr was subject to parole conditions.  Carr

successfully filed a habeas corpus petition claiming that he was being held in state

custody in violation of his due process rights to a fair trial.  This Court granted his

1

petition and the Second Circuit affirmed.  Plaintiff filed this action, pursuant to 42

U.S.C. § 1983 ("section 1983"), against the City of New York and certain law

enforcement officers alleging violations of his civil rights as a result of malicious

prosecution, fabrication of false "evidence," and failure to intervene.

Defendants now move for summary judgment, seeking to dismiss the

Complaint in its entirety.  For the reasons stated herein, defendants' motion is

granted and this case is dismissed.

## II.  FACTUAL BACKGROUND

### A.  Underlying Criminal Conduct

On February 15, 2001, Police Officer Joseph Barosa, then a member

of the Street Narcotics Enforcement Unit, was surveying the vicinity of 47th Street,

between Eighth and Ninth Avenues, in an "observation post."[1]  In the field were

Police Officers John G. Hawthorne and Mark MacDonnell, Detective Gregory

Thornton, and Sergeant McCord.[2]  Officer Barosa was situated on the roof of a

five-story building located on the north side of 47th Street.[3]

---

[1]      *See* Plaintiff's Counter Statement Pursuant to Local Civil Rule 56.1
("Pl. 56.1") ¶ 1.

[2]      *See id.* ¶ 5.

[3]      *See id.* ¶ 2.

Carr was in the area of observation on the evening of February 15, 2001.[4]  Officer Barosa claimed to have seen an individual, later identified as Ronald Paine, approach Carr.[5]  Officer Barosa alleged that he observed a hand-to-hand drug sale between Carr and Paine.[6]  Afterward, Officer Barosa stated that he observed Paine smoke what appeared to be crack cocaine from a pipe in the vestibule of a storefront.[7]  Carr denies that he had any interaction with Paine, much less that he sold him crack cocaine.[8]

In his grand jury testimony, Carr denied that he sold crack cocaine to Paine or anyone else.  Carr explained that, earlier in the evening, he ran into a prostitute friend with whom he had previously shared drugs.[9]  The prostitute gave Carr approximately $175 and asked him to purchase twenty bags of crack cocaine

---

[4]    *See id.* ¶ 8.

[5]    *See id.* ¶ 21.

[6]    *See id.* ¶ 23 ("Defendant Officer Barosa claims that Paine handed plaintiff what appeared to be bills of currency, and plaintiff handed Paine a small object.").

[7]    *See id.* ¶ 25.

[8]    *See id.* ¶¶ 21-23, 25-26.

[9]    *See* Defendants' Statement Pursuant to Civil Rule 56.1 ("Def. 56.1") ¶ 10(a).

for their mutual use later that evening.[10]  After purchasing the drugs (earlier and at a different location), Carr waited for the prostitute on the corner of 47th Street and Eighth Avenue, where he was approached by police officers.[11]

After observing the alleged hand-to-hand sale, Officer Barosa communicated the physical description of the participants to the officers in the field.[12]  Carr was arrested by Police Officer Hawthorne and Detective Thornton at approximately 1:12 a.m., four minutes after Paine was arrested.[13]  Carr was searched incident to the arrest and seventeen bags of crack cocaine were recovered from his jacket pocket.[14]  Carr and Paine were then transported to the Midtown North Police Precinct.[15]  Later that morning, Officer Barosa signed a criminal complaint charging Carr with criminal possession of a controlled substance with intent to sell and two counts of sale of a controlled substance.[16]

---

[10]     *See id.*¶ 10(b).

[11]     *See id.* ¶ 10(c).

[12]     *See id.* ¶ 3.

[13]     *See id.* ¶¶ 4, 5.

[14]     *See id.* ¶ 5.

[15]     *See id.* ¶ 7.

[16]     *See id.* ¶ 8.

## B.    Procedural History

On February 23, 2001, Carr was indicted on all charges listed in the criminal complaint.[17]  On April 4, 2001, Judge Renee A. White conducted an *in camera* review of the grand jury minutes and found them legally sufficient to establish the offenses charged.[18]  On June 27, 2001, following a combined *Mapp/Dunaway/Wade* hearing, Judge Marcy L. Kahn found that Carr's arrest was based upon probable cause and that he was lawfully searched incident to arrest.[19]  At the trial, the portion of plaintiff's grand jury testimony containing the admission that, on the night in question, he bought crack cocaine to share with his prostitute friend was read into the record.[20]

At the charging conference, the trial judge denied defense counsel's request to charge the jury with the agency defense.[21]  In summation, the prosecutor

---

[17]    *See id.* ¶ 9.

[18]    *See id.* ¶ 11.

[19]    *See id.* ¶ 12.

[20]    *See id.* ¶ 19.

[21]    *See id.* ¶ 20.  The agency defense, which applies when a person buys drugs for himself and as an agent for another, precludes a finding of "intent to sell" as the person cannot, at the same time act, in the interest of a buyer and a seller. *See Harris v. Dennison,* No. 06 Civ. 1508, 2007 WL 2398821, at *7 (S.D.N.Y. Aug. 20, 2007).

argued that Carr's concession that he intended to give the crack cocaine he purchased to his prostitute friend met the definition of "intent to sell," as defined in the jury charge.[22]  The court instructed the jury that "sell" was defined as "to sell, exchange, give or dispose of to another or to offer or agree to do the same."[23] Defense counsel unsuccessfully moved for a mistrial twice on the basis of the court's refusal to charge the agency defense.[24]  Additionally, at the conclusion of the jury charge, defense counsel once again objected to the trial court's refusal to charge the agency defense.[25]

During deliberations, the jury sent a note which asked whether plaintiff's grand jury testimony constituted an admission of guilt in light of the definition of "intent to sell" given by the judge.[26]  On November 7, 2001, Carr was acquitted of both sale counts but was convicted of criminal possession of a controlled substance with intent to sell in the third degree.[27]  On December 12,

---

[22]     *See* Def. 56.1 ¶ 22.

[23]     *Id.* ¶ 25.

[24]     *See id.* ¶ 23.

[25]     *See id.* ¶ 26.

[26]     *See id.* ¶ 27.  *See also* Pl. 56.1 ¶ 40.

[27]     *See* Def. 56.1 ¶ 29.

2001, Carr was sentenced to four and a half to nine years of imprisonment.[28]  On

July 29, 2004, the Appellate Division, First Department, affirmed Carr's

conviction and upheld the trial judge's decision not to instruct the jury with the

agency defense.[29]  In August 2005, Carr was released from prison but remained on

parole.[30]  On August 15, 2007, this Court granted Carr's petition for habeas corpus,

finding that the trial judge's decision not to charge the jury on the agency defense

was in error and resulted in a violation of due process.[31]  On December 4, 2008, the

Second Circuit affirmed the grant of Carr's habeas corpus petition.[32]

## C.    Causes of Action

On October 5, 2011, Carr filed the instant action against the City of

New York and certain law enforcement officials.  Carr alleges the following causes

of action: *First*, Officers Barosa and Hawthorne, acting in concert and within the

scope of their authority, caused Carr to be imprisoned and maliciously and

criminally prosecuted without probable cause in violation of Carr's Fourth and

---

[28]      *See id.* ¶ 31.

[29]      *See id.* ¶ 32.

[30]      *See* Pl. 56.1 ¶ 44.

[31]      *See* Def. 56.1 ¶ 33.  *See also Harris*, 2007 WL 239882.

[32]      *See* Def. 56.1 ¶ 34.  *See also Harris v. Alexander*, 548 F.3d 200 (2d
Cir. 2008).

Fourteenth Amendment Rights.[33]  Specifically, the Officers allegedly deprived Carr of his liberty without probable cause by using "false, misleading or inherently unreliable 'evidence.'"[34]  *Second*, the acts of defendants constituted malicious prosecution under the laws of the State of New York and the Fourth Amendment.[35]  *Third*, defendants had an affirmative duty to intervene on behalf of Carr and failed to do so.[36]  Carr withdrew his fourth cause of action, alleging municipal liability against the City of New York.[37]  Carr also withdrew all of his claims against Police Officers Gregory Thornton and Mark MacDonnell and Sergeant Conor McCord.[38]

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact

---

[33]     *See* Compl. ¶ 91.

[34]     *Id.* ¶ 95(c).

[35]     *See id.* ¶ 101.

[36]     *See id.* ¶ 110.

[37]     *See* Pl. Mem. at 1-2.

[38]     *See id.* at 2.

and . . . the movant is entitled to judgment as a matter of law.'"[39]  "A fact is material if it might affect  the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[40]

"[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[41]  "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the non[-]movant's claim."[42]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[43]  The non-moving party "'must do more than simply show

---

[39]     *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[40]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012) (internal quotations and alterations omitted).

[41]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[42]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[43]     *See id.*

that there is some metaphysical doubt as to the material facts,'"[44] and cannot "rely on conclusory allegations or unsubstantiated speculation."[45]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[46]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[47]

## IV.   APPLICABLE LAW

### A.   Statute of  Limitations

The statute of limitations for a section 1983 action is three years.[48] Although New York law provides the applicable statute of limitations, federal law governs the accrual of a malicious prosecution claim.[49]  Generally speaking, a

---

[44]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[45]     *Id.*

[46]     *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[47]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[48]     *See Owens v. Okure,* 488 U.S. 235, 250 (1989).

[49]     *See Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999).

claim accrues when "'the plaintiff knows or has reason to know of the injury which is the basis of the action.'"[50]  However, as outlined by the Supreme Court in *Heck v. Humphrey,* a malicious prosecution claim does not accrue until the criminal proceeding terminates in the plaintiff's favor.[51]  Thus, a cause of action for malicious prosecution does not arise until the "setting aside of an existing conviction which success in the tort action would impugn."[52]

Where the underlying criminal charges were resolved at different times, there must be a separate analysis of each charge that was criminally prosecuted.[53]  An acquittal on one charge can satisfy the favorable termination requirement "even when there has been a conviction on a related charge, or one arising from the same incident or event."[54]  The analysis must focus on whether the

---

[50]     *Id.* (citing *Singleton* v. *City of New York*, 632 F.2d 185, 190 (2d Cir. 1980)).

[51]     *See* 512 U.S. 477, 489 (1994).  *See also Janetka*, 892 F.2d at 189 (noting that favorable termination is a "prerequisite to the commencement of the action").

[52]     *Heck,* 512 U.S. at 493.

[53]     *See Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir. 1991).

[54]     *Janetka,* 892 F.2d at 190.

acquitted charge and the convicted charge represent "distinct offenses involving distinct allegations" such that an acquittal permits a cause of action to proceed.[55]

### B.    Malicious Prosecution

In order to establish a claim for malicious prosecution under section 1983, a plaintiff must allege the elements of malicious prosecution under state law.[56]  The elements of a malicious prosecution claim under New York law are: (1) the commencement or continuation of a criminal proceeding; (2) the favorable termination of that proceeding; (3) lack of probable cause, and (4) malice.[57] Probable cause defeats a claim of malicious prosecution.[58]  Probable cause, in the context of malicious prosecution, has been described as "facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty."[59]

An indictment by a grand jury creates a presumption of probable cause that may be overcome only with "evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police

---

[55]    *Id.*

[56]    *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir. 2002).

[57]    *See Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013).

[58]    *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

[59]    *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003).

conduct taken in bad faith."[60]  However, a plaintiff can no longer overcome this

presumption by alleging that a police officer committed perjury before the grand

jury as officers are entitled to absolute immunity for their testimony in that

forum.[61]

        For a proceeding to be "favorably terminated," it need not result in an

acquittal, although that is sufficient.[62]  When a termination is inconclusive because

it does not address the merits of the charge, the facts of the surrounding

termination must be examined to determine "whether the failure to proceed implies

a lack of reasonable grounds for the prosecution."[63]  Finally, malice "does not have

to be actual spite or hatred, but means only 'that the defendant must have

commenced the criminal proceeding due to a wrong or improper motive,

_____

[60]    *Newton v. City of New York,* 640 F. Supp. 2d 426, 442 (S.D.N.Y. 2009) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).

[61]    *Brown v. City of New York*, No. 08–CV–5095, 2013 WL 1338785, at *4 n.3 (E.D.N.Y. Apr. 1, 2013) ("As a result of *Rehberg*, plaintiff cannot base his malicious prosecution claim on the theory that [Officer] Dimitrakakis lied to the grand jury, nor can he use Dimitrakakis's grand jury testimony to rebut the presumption of probable cause.") (citing *Rehberg v. Paul*, __ U.S. __, 132 S. Ct. 1497, 1510 (2012)).

[62]    *See Jovanovic v. City of New York,* No. 04 Civ. 8437, 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006).

[63]    *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989).

something other than a desire to see the ends of justice served.'"[64]  In most cases, a lack of probable cause is not dispositive but "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."[65]

### C.   Fabrication of Evidence

"A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."[66]

### D.    Failure to Intervene

All law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.[67]  An officer who fails to intervene is liable for the preventable harm caused by the actions of the other officers where the

---

[64]     *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).

[65]     *Id.* (internal quotations omitted). *Accord Ricciuti v. New York City Transp. Auth.*, 124 F.3d 123, 131 (2d Cir. 1997).

[66]     *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d Cir. 2012) (citations omitted).

[67]     *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

officer observes, or has reason to know, that a citizen has been unjustifiably arrested or that any other constitutional violation has been committed.[68]  In order for liability to attach on a failure to intervene claim, "there must have been a realistic opportunity to intervene to prevent the harm from occurring."[69]

## V.    DISCUSSION

### A.    Statute of Limitations

All of plaintiff's claims arising from the two sale charges accrued at the time plaintiff was acquitted of those charges in 2001.  Those claims are thus time-barred because they were brought outside of the applicable statute of limitations.  However, claims stemming from the possession with intent to sell charge did not accrue until the Second Circuit affirmed this Court's grant of habeas relief.  These claims are not time-barred.

### B.    Malicious Prosecution

Plaintiff argues that until the entire underlying criminal proceeding terminated in his favor, he was unable to bring this lawsuit.[70]  He is mistaken.

---

[68]    *See id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).

[69]    *Id.*

[70]    *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 3.

Although a criminal proceeding must terminate in plaintiff's favor, charges must be analyzed separately. In *Janetka v. Dabe*, the plaintiff was acquitted of resisting arrest but convicted of disorderly conduct.[71] The Second Circuit held that the charges could be analyzed separately and that an acquittal on the merits laid the foundation for a malicious prosecution action based on the acquitted conduct.[72]

Here, the sale charges stem from conduct distinct from the conduct underlying the possession with intent to sell. Officer Barosa's testimony regarding plaintiff's alleged hand-to-hand transaction with Paine supported the sale charges. Plaintiff's possession of seventeen bags of crack supported the possession charge. Although the malicious prosecution claim based on the possession charge is timely, it fails for a different reason.

## 1.    Probable Cause

Defendants argue that they had probable cause to prosecute plaintiff on the charge of possession with intent to sell based on plaintiff's admission to the grand jury that he purchased crack cocaine on the night of his arrest.[73] Clearly, at the time of the indictment, there was probable cause to prosecute plaintiff for the

---

[71]    *See* 892 F.2d at 188.

[72]    *See id.* at 190.

[73]    *See* Def. Mem. at 6.

16

possession charge given his admission.  Even without the admission, an indictment by a grand jury creates a rebuttable presumption of probable cause.[74]  Moreover, this presumption cannot be overcome by alleging that a police officer lied before the grand jury given the absolute immunity accorded grand jury witnesses.[75]

### 2. Testimonial Immunity

In *Rehberg v. Paulk*, the Supreme Court held that a "grand jury witness is entitled to the same immunity as a trial witness."[76]  "This means that a grand jury witness has absolute immunity from any § 1983 claim *based on the witness' testimony*."[77]  The Supreme Court provided the following rationale for its ruling:

> [I]t is almost always a prosecutor who is responsible for the decision to present a case to a grand jury, and in many jurisdictions, even if an indictment is handed up, a prosecution cannot proceed unless the prosecutor signs the indictment.  It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the

---

[74]     *See* Reply Mem. at 9 (citing *Green v. Montgomery,* 219 F.3d 52, 60 (2d Cir. 2000)).

[75]     *See Rehberg*, 132 S. Ct. 1497.

[76]     *Id.* at 1510.

[77]     *Id.* at 1506 (emphasis added).

prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.[78]

Thus, even without plaintiff's grand jury admission, there was probable cause to continue the criminal prosecution against him at the time the indictment was returned and thereafter. Whether there was probable cause before the indictment was returned is a different matter.

Plaintiff argues that the instant case is distinguishable from *Rehberg v. Paulk* on the ground that his prosecution was initiated by a criminal complaint rather than an indictment.[79] According to plaintiff, the criminal complaint contained "false and incomplete information."[80] Defendants do not dispute that the filing of a criminal complaint can initiate a prosecution.[81] Defendants argue, however, that plaintiff "must also show the absence of probable cause for his

---

[78]    *Id.* at 1508 (footnote and citations omitted).

[79]    *See* Pl. Mem. at 8 (stating that "the decision in *Rehberg* only bars § 1983 claims against grand jury witnesses if the § 1983 claims are based upon the grand jury testimony itself. *Rehberg* cannot be applied to plaintiff's claims because his malicious prosecution claim is not based upon defendant' grand jury testimony, trial testimony, or testimony at pre-trial hearings").

[80]    *Id.* at 9.

[81]    *See* Def. Mem. at 9.

*continued* prosecution[.]"[82]   The impact of *Rehberg* on a malicious prosecution

claim involving a criminal complaint has been analyzed as follows:

> [Arresting Officer] Ostrowski's signing of the sworn criminal complaint alone is sufficient to satisfy [the initiation] element. *Rounseville v. Zahl*, 13 F.3d 625, 628 (2d Cir. 1994) ("[D]efendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants initiated a criminal proceeding against [plaintiffs]."); *Ricciuti*, 124 F.3d at 130 ("[N]o one disputes that [the officer] started the assault prosecution by filing the charges of second-degree assault."). While it is true that "the chain of causation," between the actions of an officer and the claim of malicious prosecution "is broken by the intervening exercise of independent judgment," *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999), this 'break' does not occur until after plaintiff has been *formally charged* – in this case until after the grand jury would have returned an indictment. *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) ( "Once the grand jury indicted [plaintiff], control of the prosecution passed to the prosecutor and was no longer within the agent's authority.").[83]

On reconsideration, the court clarified:

> *Rehberg*, however, is inapplicable.  *Rehberg* did not alter controlling Second Circuit (and New York) law that an officer's filing of a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim.

---

[82]     *Id.* (emphasis added).

[83]     *Sankar v. City of New York*, 867 F. Supp. 2d 297, 311 (E.D.N.Y. 2012) (emphasis in original).

> [Officer] Ostrowski's testifying at the grand jury was but one additional step this officer took in his effort to push the case against plaintiff forward.   If anything, *Rehberg* reinforces the distinction between one who simply testifies at a grand jury and "does not make the decision to press criminal charges," *Rehberg*, 132 S. Ct. at 1508, and one, like Ostrowski, who "set[s] the wheels of government in motion by instigating a legal action." *Id.* at 1507 (citing *Wyatt v. Cole*, 504 U.S. 158, 164-65 (1992)).  Defendants' attempt to convert grand jury testimony into an all-purpose shield from malicious prosecution liability is unpersuasive. The adoption of such a broad interpretation of *Rehberg* would allow any police officer – regardless of the extent of their involvement in   laying the groundwork for an indictment – to escape liability merely by securing an appearance before a grand jury.[84]

In sum, *Rehberg* does not protect the allegedly false allegations made by Officer Barosa in the criminal complaint he filed against plaintiff.  If the claims relating to the two sale charges were not time-barred, plaintiff would have had a malicious prosecution claim for the one-week period between the filing of the criminal complaint (February 16, 2001) and the return of the indictment (February 23, 2001).  Plaintiff's malicious prosecution claim relating to the possession with intent to sell charge would also be limited to this one-week period.  But this claim fails for a different reason, namely, the partial truth of the criminal complaint. Even under plaintiff's version of events, the criminal complaint is not entirely false

---

[84]     *Sankar v. City of New York*, No. 07 CV 4726, 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) (parallel citations omitted).

in that it states that "defendant knowingly and unlawfully possessed a narcotic

drug with intent to sell it."[85]   This kernel of truth forecloses any malicious

prosecution claim with regard to the possession charge.  This claim is therefore

dismissed as well.[86]

### C.    False Arrest/Fabrication of Evidence

Plaintiff's First Cause of Action[87] could be interpreted as raising a

false arrest claim in that it speaks of plaintiff's right to be free from "unreasonable

seizure" under the Fourth Amendment.[88]  If so interpreted, this cause of action

must be dismissed as time-barred given that plaintiff was arrested on February 16,

2001.  Plaintiff's First Cause of Action could also be interpreted as raising a

fabrication of evidence claim, which accrues when the plaintiff learns that evidence

was fabricated and an injury was caused by the fabrication.  Here, plaintiff

arguably learned of the alleged fabrication as soon as the criminal complaint was

---

[85]    Criminal Complaint, Ex. F to the Declaration of Elizabeth Krasnow, defendants' counsel, in support of their motion for summary judgment.

[86]    Regardless of the truth of the allegations in the criminal complaint, a one-week malicious prosecution claim would likely be dismissed on the ground of *de minimis non curat lex* (the law does not concern itself about insignificant matters).

[87]    *See* Complaint ¶¶ 90-99.

[88]    *Id.* ¶ 91.

filed but certainly no later than when Officer Barosa took the stand at his trial in November 2001.  Thus, the fabrication of evidence claim is also untimely and must be dismissed.

Plaintiff's fabrication of evidence claim fails for several other reasons. *First*, the police officer defendants are absolutely immune from section 1983 liability arising from false or perjured grand jury testimony.[89]  *Second*, in a related vein, plaintiff  "cannot show causation – i.e., that the alleged fabrication of evidence led to a deprivation of his liberty – because the only avenue by which the testimony could reach the jury was through [Officer Barosa's] testimony, for which he enjoys absolute immunity."[90]  *Third*, the alleged fabrication was unlikely to influence the jury's decision.  The fabrication in issue relates to Officer Barosa's observation of a hand-to-hand drug exchange.  But this "evidence" is only relevant to the two sale charges, for which plaintiff was acquitted.  Evidence of an exchange, whether true or not, would not have impacted the jury's verdict regarding the possession with intent to sell charge.  Finally, the trial judge's refusal

---

[89]     *See Rehberg*, 132 S. Ct. at 1506 ("[W]e conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial.  This means that a grand jury witness has absolute immunity *from any § 1983 claim* based on the witness' testimony.") (emphasis added).

[90]     *Jovanovic*, 486 Fed. App'x at 152.

to charge the jury with the agency defense was an intervening and superseding cause of plaintiff's conviction on the possession with intent to sell count.[91]  This broke the chain of causation between: the allegedly unlawful arrest and search incident to arrest; Barosa's testimony regarding the sale between plaintiff and Paine (for which he is immune); and plaintiff's eventual conviction on the possession with intent to sell charge.  For all of these reasons, plaintiff's false arrest/fabrication of evidence claim must be dismissed.

### C.   Failure to Intervene

Plaintiff argues that if Officer Hawthorne cannot be held personally liable for malicious prosecution and fabrication of evidence, he should be held liable for failing to intervene in the malicious prosecution of plaintiff.[92]  Plaintiff claims that Officer Hawthorne should have stopped Officer Barosa from maliciously prosecuting plaintiff and fabricating evidence against him.[93]

---

[91]   *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment.").

[92]   *See* Pl. Mem. at 18.

[93]   *See id.*

23

Defendants argue that there was no opportunity for Officer Hawthorne to intervene.[94]

In order for liability to attach on a failure to intervene claim, there must have been a "realistic opportunity to prevent the harm from occurring."[95] Often, a failure to intervene claim stems from an officer's use of excessive force in an arrest and the witnessing officer's failure to intervene to stop the assault.[96] Here, plaintiff does not allege any specific moment at which Officer Hawthorne was presented with an opportunity to intervene and failed to do so. Accordingly, plaintiff's failure to intervene claim is hereby dismissed.

## VI.   CONCLUSION

For the reasons set forth above, defendants' summary judgment motion is granted and this case is dismissed. The Clerk of the Court is directed to close this motion (Docket Entry # 23).

---

[94]    *See* Def. Mem. at 13.

[95]    *Anderson*, 17 F.3d at 557.

[96]    *See O'Neill*, 839 F.2d at 11; *Tavares v. City of New York,* No. 08 Civ. 3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010).

24

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              April 19, 2013

25

**- Appearances -**

**For Plaintiff:**

Stuart E. Jacobs, Esq.
Ilissa R. Brownstein, Esq.
Jacobs & Hazan, LLP
22 Cortlandt Street, 16th Floor
New York, NY 10007
(646) 510-1523

**For Defendants:**

Elizabeth N. Krasnow
Assistant Corporation Counsel
New York City Law Department
100 Church Street, 3rd Floor
New York, NY 10007
(212) 780-0976